UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------X
RODOLFO MONTER HERNANDEZ,

                  *Plaintiff,*                        Index No. 19-cv-1257

        -v-                           **DECLARATION OF CLELA**
                                          **ERRINGTON, ESQ. IN SUPPORT OF**
99 THAI PLAYGROUND LLC d/b/a        **ENTRY OF DEFAULT JUDGMENT**

THAIMEE TABLE  et al.,

                  *Defendants.*
------------------------------------------------------X

    CLELA ERRINGTON, under penalty of perjury, affirms the following to be true to the best of his knowledge:

    1.      I am an attorney licensed to practice in this state and before this Court.

    2.      I am an associate of the law firm of Michael Faillace & Associates, PC, counsel for Plaintiff in the above-captioned matter. I submit this affidavit in support of said Plaintiff's instant motion by Order to Show Cause for an entry of default judgment against Defendants 99 THAI PLAYGROUND LLC d/b/a THAIMEE TABLE, INSPIRED HOSPITALITY MANAGEMENT d/b/a THAIMEE TABLE, MATT BRUCK and NGAMPROM THAIMEE ("Defaulting Defendants").

    3.      Plaintiff seeks the entry of default judgment against Defaulting Defendants on account of their erstwhile failure to file an Answer to Plaintiffs' Complaint, dated February 8, 2019, in which Plaintiffs asserted against Defendants causes of action for unpaid minimum wages under the Fair Labor Standards Act (FLSA) and the New York Labor Law (NYLL), and a cause of action for unlawful deduction from wages for Defendants' requiring Plaintiffs to purchase "tools of the trade' from his own funds.

4.      This court has jurisdiction over Defaulting Defendants because, at all relevant times, Defaulting Defendants resided and/or transacted business, and employed Plaintiffs within this judicial district.

5.      This court has subject matter jurisdiction over Plaintiffs' claims under the Fair Labor Standards Act pursuant to 28 U.S.C. § 1331 and supplemental jurisdiction over Plaintiffs' state law claims pursuant to 28 U.S.C. § 1367.

6.      Venue is proper in this judicial district for the reasons stated in Paragraphs 4 and 5 above.

<u>Procedural History</u>

7.      Plaintiffs filed the Complaint ("Complaint") against Defendants 99 Thai Playground LLC d/b/a Thaimee Table, Inspired Hospitality Management LLC d/b/a Thaimee Table, Sung H. Choi, Luigi Doe, Matt Doe, Chai Thaimee, and Ngamprom Thaimee in this matter on September 20. 2019 (see ECF Doc. No. 1).

8.      Defendant 99 Thai Playground LLC d/b/a Thaimee Table was served with Summons and Complaint on April 1, 2019 (see ECF Doc No. 20).

9.      Defendant Inspired Hospitality Management LLC d/b/a Thaimee Table was served with Summons and Complaint on April 2, 2019 (see ECF Doc. No. 21)

10.     Plaintiffs filed the First Amended Complaint ("Amended Complaint") against 99 Thai Playground LLC d/b/a Thaimee Table, Inspired Hospitality Management LLC d/b/a Thaimee Table, Chai Thaimee, Ngamprom Thaimee, Matt Bruck, Luigi Doe, and Andrew Pirgousis in this matter on April 25, 2019 (see ECF Doc. No. 22).

11.     Defendant 99 Thai Playground LLC d/b/a Thaimee Table was served with Amended Summons and Amended Complaint on May 13, 2019 (see ECF Doc. 51).

12.     Defendant Inspired Hospitality Management LLC d/b/a Thaimee Table was served with Amended Summons and Amended Complaint on May 13, 2019 (see ECF Doc. 52).

13.     Defendant Matt Bruck was served with Amended Summons and Amended Complaint on May 13, 2019 (see ECF Doc. No. 37).

14.     Defendant Ngamprom Thaimee was served with Amended Summons and Amended Complaint on May 14, 2019 (see ECF Doc. No. 38).

15.     To date, Defaulting Defendants have not filed any Answer or moved with respect to the Complaint.

16.     Upon Plaintiff's request on February 26, 2020, Certificates of Default were entered in this matter against Defendants 99 Thai Playground LLC d/b/a Thaimee Table, Inspired Hospitality Management LLC d/b/a Thaimee Table, Matt Bruck and Ngamprom Thaimee. (see ECF Docs. 74-75, 78-79).

17.     The applicable default applies to all current Defendants in this case.

<u>Legal Standard for Entry of Default Judgment</u>

18.      Upon entry of a default, the court may award damages based upon evidence submitted through declarations and exhibits, or by an evidentiary hearing. <u>Cement & Concrete Workers Dist. Council Welfare Fund v. Metro Foundation Contractors, Inc.</u>, 699 F.3d 230, 234 (2d Cir. 2012). "While Rule 55[b][2] permits the district court to conduct a hearing to determine damages, such a hearing is not mandatory." <u>Id</u>. "Together, 'Rule 55[b][2] and relevant case law give district judges much discretion in determining when it is "necessary and proper" to hold an inquest on damages.'" <u>Id</u>. (<u>quoting</u> <u>Tamarin v. Adam Caterers, Inc.</u>, 13 F.3d 51, 54 (2d Cir. 1993)).

19.     Under Rule 55(b)(2)(B), it is well within the discretion of the Court to decline to hold such a hearing when the plaintiff submits an affidavit attesting, based on "real numbers," to the extent of damages. See Tamarin v. Adam Caterers, Inc., supra.

Plaintiff's Calculation of Damages

20.     As demonstrated in the Damage Calculation spreadsheet attached hereto as **Exhibit A**, and as testified to by Plaintiff in the declaration attached hereto as **Exhibit B**, the damages sustained by the respective plaintiffs can be ascertained and computed. Therefore, no hearing is required as to the extent of such damages.

21.     In the damages chart, the Plaintiffs wage and hour damages (including overtime wage damages, spread of hours wage damages, liquidated damages, and interest) are calculated in segments of time, broken into "Pay Periods."  Each pay period calculates the number of weeks in each period ("No. of Weeks in Pay Period"), and then based upon each of the Plaintiff's affidavits, lists the number of hours worked per week in each period ("Hours Per Week in Period). The applicable minimum wage data, and associated overtime rate, are included as applicable for each pay period. Then there is a column for Paid Wages, the first column calculates the "regular rate of pay" for each period by dividing the amount actually paid each week to each Plaintiff (the "Credited Weekly Pay") for each period, then dividing that amount by 40 pursuant to 12 NYCRR §146-3.5, which sets forth this standard for calculating effective hourly rate for employees in the hospitality industry who were unlawfully paid a fixed weekly salary. The overtime rate is calculated using a 1.5 multiplier for time and a half overtime calculation later in the chart.  The "Credited Weekly Pay" is the amount of money actually paid and is based upon the Plaintiff's affidavits. The information the number of days each week in that period for which the Plaintiffs worked in excess of 10 hours per day is also included, and was therefore entitled to Spread of Hours Pay ("No. of SOH Days Per Wk in Period").

22.     Calculations within the Chart – The "Lawful Weekly Pay" column of the chart calculates what the Plaintiffs should have been paid per week during each pay period. The actual formula used in this column is as follows:( (greater of minimum wage or calculated base pay) * Hours Per Week up to 40) + ((greater time and a half rate) * (Hours Per Week over forty, if any)).

23.     The chart therefore automatically determines whether the effective calculated base rate of pay falls below the minimum wage, and if it does, it discards it.  If it does not, it uses it for the subsequent calculations (as the Plaintiffs are entitled to earn at least the minimum wage). The chart then automatically calculates what the hours should have been compensated at under the base rate of pay up to the first 40 hours of work per week, and then at time-and-a-half pay for any hours over 40.   The Chart then subtracts the amount actually paid to the Plaintiffs (the "Credited Weekly Pay") and then derives the "Underpayment per Week." This number is then multiplied by the number of weeks in each period and derives the total damages due for unpaid minimum wages and overtime for each period ("Unpaid Wages & OT").  The Chart then applies the liquidated damages provisions of the NYLL to the "Unpaid Wages and OT" automatically in the "Liq. Damages on Wages & OT" by 100%.

24.     The unpaid spread of hours pay ("Unpaid Spread of Hours (SOH) Pay") is derived by multiplying (the number of SOH days per week) * (the number of weeks per period) * (the minimum wage).  The liquidated damages on SOH pay are all calculated at the rate of 100%.

25.     From February 8, 2013 until December 31, 2013 when the applicable minimum wage under New York law[1] was $7.25 per hour, Plaintiff was paid a weekly salary of $350.00 per week. His regular rate of pay is thus calculated by dividing .this amount by 40, resulting in an effective hourly rate of $8.75 and thus an effective overtime rate of $13.13. He worked 96 hours per week during this period and thus entitled to be paid $1,085.00 per week for the 47 weeks during this period. He was thus underpaid $735.00 per week, for a total of $735.00 * 47 = $34,545.00. Under the NYLL, he is entitled to an additional $34,545.00 in liquidated damages for this time period.

26.     From February 8, 2013 until December 31, 2013, Plaintiff worked a shift that spanned more than ten hours per day seven days per week and is thus entitled to Spread of Hours Pay of $7.25 * 7 days * 47 weeks = $2,385.25. Under the NYLL, he is entitled to an additional $2,385.25 in liquidated damages for this time period.

27.     From January 1, 2014 until October 15, 2014, when the applicable minimum wage under New York law was $8.00 per hour, Plaintiff was paid a weekly salary of $350.00 per week. His regular rate of pay is thus calculated by dividing .this amount by 40, resulting in an effective hourly rate of $8.75 and thus an effective overtime rate of $13.13. He worked 96 hours per week during this period and thus entitled to be paid $1,085.00 per week for the 41 weeks during this period. He was thus underpaid $735.00 per week, for a total of $735.00 * 41 = $30,135.00. Under the NYLL, he is entitled to an additional $30,135.00 in liquidated damages for this time period.

28.     From January 1, 2014 until October 15, 2014, Plaintiff worked a shift that spanned more than ten hours per day seven days per week and is thus entitled to Spread of Hours

---

[1] Because the minimum wage under New York law was, at all relevant times, greater than or equal to the minimum wage under Federal law, all computations of shortfall of wages in this affidavit employ the applicable state law minimum wage.

Pay of $8 * 7 days * 41 weeks = $2,296.00. Under the NYLL, he is entitled to an additional $2,296.00 in liquidated damages for this time period.

29.     From October 16, 2014 until December 31, 2014, when the applicable minimum wage under New York law was $8.00 per hour, Plaintiff was paid a weekly salary of $600 per week. His regular rate of pay is thus calculated by dividing .this amount by 40, resulting in an effective hourly rate of $15.00 and thus an effective overtime rate of $22.50. He worked 69 hours per week during this period and thus entitled to be paid $1,252.50 per week for the 11 weeks during this period. He was thus underpaid $652.50 per week, for a total of $652.50 * 11 = $7,177.50. Under the NYLL, he is entitled to an additional $7,177.50 in liquidated damages for this time period.

30.     From October 16, 2014 until December 31, 2014, Plaintiff worked a shift that spanned more than ten hours per day six days per week and is thus entitled to Spread of Hours Pay of $8 * 6 days * 11 weeks = $528.00. Under the NYLL, he is entitled to an additional $528.00 in liquidated damages for this time period.

31.     From January 1, 2015 until October 15, 2015, when the applicable minimum wage under New York law was $8.75 per hour, Plaintiff was paid a weekly salary of $600 per week. His regular rate of pay is thus calculated by dividing .this amount by 40, resulting in an effective hourly rate of $15.00 and thus an effective overtime rate of $22.50. He worked 69 hours per week during this period and thus entitled to be paid $1,252.50 per week for the 41 weeks during this period. He was thus underpaid $652.50 per week, for a total of $652.50 * 41 = $26,562.50. Under the NYLL, he is entitled to an additional $26,562.50 in liquidated damages for unpaid overtime for this time period.

32.     From January 1, 2015 until October 15, 2015, Plaintiff worked a shift that spanned more than ten hours per day six days per week and is thus entitled to Spread of Hours

Pay of $8.75 * 6 days * 41 weeks = $2152.50. Under the NYLL, he is entitled to an additional $2152.50 in liquidated damages for spread of hours pay during this time period.

33.     From October 16, 2015 until December 31, 2015, when the applicable minimum wage under New York law was $8.75 per hour, Plaintiff was paid a weekly salary of $700 per week. His regular rate of pay is thus calculated by dividing .this amount by 40, resulting in an effective hourly rate of $17.50 and thus an effective overtime rate of $26.25. He worked 60 hours per week during this period and thus entitled to be paid $1,225.00 per week for the 11 weeks during this period. He was thus underpaid $525.00 per week, for a total of $525.00 * 11 = $5,775.00. Under the NYLL, he is entitled to an additional $5,775.00 in liquidated damages for unpaid overtime for this time period.

34.     From January 1, 2016 until November 15, 2016, when the applicable minimum wage under New York law was $9.00 per hour, Plaintiff was paid a weekly salary of $700 per week. His regular rate of pay is thus calculated by dividing .this amount by 40, resulting in an effective hourly rate of $17.50 and thus an effective overtime rate of $26.25. He worked 60 hours per week during this period and thus entitled to be paid $1,225.00 per week for the 46 weeks during this period. He was thus underpaid $525.00 per week, for a total of $525.00 * 46 = $24,150.00. Under the NYLL, he is entitled to an additional $24,150.00 in liquidated damages for unpaid overtime for this time period.

35.     From November 16, 2016 until December 31, 2016, when the applicable minimum wage under New York law was $9.00 per hour, Plaintiff was paid a weekly salary of $700 per week. His regular rate of pay is thus calculated by dividing .this amount by 40, resulting in an effective hourly rate of $17.50 and thus an effective overtime rate of $26.25. He worked 48 hours per week during this period and thus entitled to be paid $910.00 per week for the 6 weeks during this period. He was thus underpaid $210 per week, for a total of $210 * 6 =

$1,260.00. Under the NYLL, he is entitled to an additional $1,260.00 in liquidated damages for unpaid overtime for this time period.

36.     From January 1, 2017 until July 15, 2017, when the applicable minimum wage under New York law was $11.00 per hour, Plaintiff was paid a weekly salary of $700 per week. His regular rate of pay is thus calculated by dividing .this amount by 40, resulting in an effective hourly rate of $17.50 and thus an effective overtime rate of $26.25. He worked 48 hours per week during this period and thus entitled to be paid $910.00 per week for the 28 weeks during this period. He was thus underpaid $210 per week, for a total of $210 * 28 = $5,880.00. Under the NYLL, he is entitled to an additional $5,880.00 in liquidated damages for unpaid overtime for this time period.

37.     Plaintiff, as shown in Exhibit A, is entitled to an additional $5,000 for Defendants' failure to provide a Wage Notice at the time of hire and an additional $5,000 in damages for Defendants' failure to provide a Wage Statement for well in excess of twenty workdays.

38.     As shown in Exhibit A (column V),  has accrued on the unpaid minimum wages and overtime pay owed to Plaintiff in the amount of (as of July 22, 2020) $ 66,908.07 This figure is computed by multiplying (the number of days that has passed between now and the midpoint[2] of the time period during which the unpaid minimum wage and/or overtime was earned) times (0.09, the annual pre-judgment interest rate provided under New York law[3] / 365, the number of days per year) times (the amount of unpaid minimum wage and/or overtime).

---

[2] In instances where liabilities on which interest accrues were incurred over an extended period of time, courts have often found it useful to use the midpoint of such time for purposes of calculating the amount of interest accrued. See, e.g., U.S. Fidelity and Guar. Co. v. Braspetro Oil Services Co., 369 F.3d 34 (2d Cir. 2004).
[3] N.Y. CPLR § 5004. The state law rate of interest governs for judgment on all claims arising under state law (even if such judgment is obtained in federal court). See, e.g., Pereira v. Marshall & Sterling, Inc (In re Payroll Express Corp), 2005 Bankr. LEXIS 3147, *6-7 (Bankr. S.D.N.Y. July 28, 2005)

39.     As shown in Exhibit A (column W), interest has accrued on the unpaid spread of hours pay owed to Plaintiff in the amount of (as of July 22, 2020) $4,049.72. This figure is computed by multiplying (the number of days that has passed between now and the midpoint[4] of the time period during which the unpaid minimum wage and/or overtime was earned) times (0.09, the annual pre-judgment interest rate provided under New York law[5] / 365, the number of days per year) times (the amount of unpaid spread of hours pay).

40.     As pled in the Amended Complaint (¶73) and accounted for in Column Y of Exhibit A, Plaintiff was unlawfully required to purchase "tools of the trade," including a three knives, four bicycles, a helmet, a vest, an apron, four pairs of kitchen shoes and bicycle maintenance and repairs, in the amount of $2,538.00, and Plaintiff is entitled to recover in this amount for such expenditures.

41.     As pled in the Amended Complaint (¶61) and account for in Column X, Defendants withheld approximately three weeks of wages from Plaintiff.

<u>Plaintiff's Attorneys' Fees</u>

42.     Plaintiffs have entered into a retainer agreement with their counsel, Michael Faillace & Associates, P.C. ("the firm"), under the terms of which the firm would be entitled to recover all costs expended pertaining to this matter ("costs") out of funds recovered pursuant to a judgment or settlement agreement, plus 40% of all remaining proceeds of such judgment or settlement agreement. Plaintiffs, through their counsel, ask the Court to approve the payment of

---

[4] In instances where liabilities on which interest accrues were incurred over an extended period of time, courts have often found it useful to use the midpoint of such time for purposes of calculating the amount of interest accrued. <u>See</u>, <u>e.g.</u>, <u>U.S. Fidelity and Guar. Co. v. Braspetro Oil Services Co.</u>, 369 F.3d 34 (2d Cir. 2004).
[5] N.Y. CPLR § 5004. The state law rate of interest governs for judgment on all claims arising under state law (even if such judgment is obtained in federal court). <u>See</u>, <u>e.g.</u>, <u>Pereira v. Marshall & Sterling, Inc</u> (In re Payroll Express Corp), 2005 Bankr. LEXIS 3147, *6-7 (Bankr. S.D.N.Y. July 28, 2005)

costs and attorneys' fees to the firm from the proceeds of the default judgment to be entered in accordance with the terms of said retainer agreement.

43.     In the alternative, Plaintiffs request that the Court approve payment to the firm of all costs plus fees in the amount of $12,314.60 in accordance with the billing records attached hereto as **Exhibit C.** The hourly rates, and justifying credentials thereof, of the respective attorneys and support staff who worked on this matter are set forth below.

44.     Michael Faillace, Esq., the Managing Member of Michael Faillace & Associates, P.C., has been in practice since 1983.  From 1983 to 2000, he was in-house Employment Counsel with International Business Machines Corporation (IBM).  He taught employment antidiscrimination law as an Adjunct Professor at Fordham University School of Law since 1992 and at Seton Hall University Law School from 1995 to 1998, and he is a nationally-renowned speaker and writer on employment law.  He is also the author of the ADA, Disability Law Deskbook: The Americans with Disabilities Act in the Workplace, published by Practicing Law Institute (PLI), and other employment law publications and presentations.  His work is billed at the rate of $450 per hour, his standard billing rate for matters paid on an hourly basis. Courts have routinely held that hourly fees of $450, or even $500, for counsel with Mr. Faillace's level of experience (37 years) and expertise are reasonable. See, e.g., Manley v. Midan Rest. Inc., No. 1:14-cv-1369 (S.D.N.Y. March 27, 2017), Doc. No. 42 at *32, 35-37 (fees of $500 per hour for FLSA litigator with 34 years of experience).

45.     Joshua S. Androphy is a former associate at Michael Faillace & Associates, P.C. He graduated from Columbia Law School in 2005. He practiced as an associate at Olshan Frome Wolosky LLP through 2012. He practiced as senior attorney with Michael Faillace & Associates, P.C. from December 2012 to present, cultivating a background in labor and employment law,

with a focus on FLSA litigation. His work is billed at the rate of $400 per hour and indicated by the initials "JA."

46.     Finn Dusenbery is a former associate at Michael Faillace & Associates, P.C.  He graduated from Brooklyn Law School in 2012.  Following law school, he worked as a solo practitioner for about five years, mainly representing employees in wage and hour and discrimination cases.  Subsequently, Finn worked for a plaintiffs'-side wage and hour class action firm from 2018 to 2019 and then joined Michael Faillace & Associates, P.C.  His work is billed at $275 per hour and indicated by the initials "FD."

47.     The undersigned, Clela A. Errington, is an associate at Michael Faillace & Associates, P.C. I am a 2012 graduate of New York University School of Law. I began my career at a series of small law firms focusing on labor and employment law, followed by several years providing litigation support to large law firms. I returned to litigation in 2019, practicing commercial litigation debt lawsuits at the Jones Law Firm, P.C. and joined Michael Faillace & Associates in 2020. My work is billed at the rate of $350 per hour and indicated by the initials "CE."

Dated: New York, New York

        July 22, 2020


                              ____/s_____
                              CLELA ERRINGTON